UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

| Present: The Honorable | Audrey B. Collins, Chief United States District Judge | | |
|---|---|---|---|
| Angela Bridges | Not present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** ORDER GRANTING MOTION FOR LEAVE TO AMEND AND DENYING AMENDED MOTION FOR RECONSIDERATION (In Chambers)

Pending before the Court is Petitioner Leonard Brown's ("Petitioner") motion for reconsideration of the Court's denial of his habeas petition. (Docket # 20.)[1] The Government filed an opposition and Petitioner filed a reply. (Docket ## 22, 26.) Also pending before the Court is Petitioner's motion for leave to amend his motion for reconsideration. (Docket # 23.) The Government filed an opposition. (Docket # 25.) Having considered the parties' arguments, and having reviewed the materials submitted and the record, the Court hereby **GRANTS** Petitioner's motion for leave to amend and **DENIES** Petitioner's amended motion for reconsideration.

**I.    BACKGROUND**

The instant case involves Petitioner's request for habeas relief. His criminal convictions arose from two separate indictments. Petitioner was charged in 2002 in the Southern District of New York in a one-count indictment for conspiracy to distribute PCP (the "New York case"). On August 21, 2003, Petitioner was also indicted in this district for conspiracy to distribute PCP (the "California case"). Petitioner was initially represented in both the New York and California cases by attorney Frank DiGiacomo. Following several months of negotiations, the parties reached an agreement under which Petitioner would plead guilty in both cases. Petitioner signed the plea agreement on April 22, 2004. (See Case # CR 03-0847, Docket #68.) On July 12, 2004, Petitioner pled guilty in both cases.

At the change of plea hearing, the Court engaged in a lengthy colloquy with Petitioner. The Court explained the charges in both cases and Petitioner asserted that he understood them. (July 12, 2004 Tr. at 6-8 (Case # CR 03-847, Docket # 245 at Ex. F).) The Court explained the possible sentences, and then inquired whether Petitioner "discussed all these consequences as well as any facts and defenses with [his] attorney." (Id. at 8-10.) Petitioner responded, "Yes, I have." (Id. at 10.) The Court continued:

---

[1] Unless otherwise noted, citations to the docket refer to case number CV 09-8168.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

>  Court:  Mr. Brown, have you had enough time to discuss the entire matter with your attorney?
>
>  Defendant:  Yes.
>
>  Court:  Do you believe he's fully advised you concerning this matter?
>
>  Defendant:  Yes.
>
>  Court:  And are you satisfied with his performance and representation in this case?
>
>  Defendant:  Yes.

(Id. at 20.)  The Court further verified that Petitioner was not suffering from a physical or mental impairment. (Id. at 19.)  The Court accepted Petitioner's guilty pleas.

Petitioner's sentencing was then postponed because the plea agreement provided that he was to be sentenced only after the case against his brother, Bobby Thompson, had been resolved.  After pleading guilty but before sentencing, Petitioner expressed dissatisfaction with Mr. DiGiacomo, and the Court replaced him with Deputy Federal Public Defender Laura Bazelon.  Thereafter, Petitioner expressed dissatisfaction with Ms. Bazelon, and the Court appointed Kenneth White to represent him.

Petitioner then filed a motion to withdraw the guilty pleas, arguing that Mr. DiGiacomo had provided ineffective assistance of counsel.  The Court denied that motion, finding that Petitioner had failed to establish a "fair and just reason" to withdraw his guilty pleas. (July 17, 2006 Order (Case # CR 03-0847, Docket # 253).)  Petitioner again requested new counsel and the Court allowed him to substitute in his fourth attorney, Fredrico McCurry.  Petitioner then filed a motion for reconsideration of the Court's denial of the motion to withdraw the guilty pleas, which the Court denied.  (October 30, 2006 Order (Case # CR 03-0847, Docket # 282).)

On March 26, 2007, Petitioner was sentenced to 212 months in prison on count one in the New York case and on count one in the California case, to be served concurrently, and to be followed by a five-year term of supervised release.  Petitioner appealed to the Ninth Circuit.  Pursuant to Anders v. California, 386 U.S. 738 (1967), Petitioner's appellate counsel moved to withdraw, arguing that Petitioner had no grounds for relief on direct appeal.  The Ninth Circuit granted that motion and Petitioner proceeded with his appeal pro se.  The Ninth Circuit dismissed the part of his appeal challenging his sentence, finding that it had been waived in his plea agreement.  The Ninth Circuit affirmed Petitioner's conviction, finding no arguable grounds for relief on direct appeal.

Petitioner then filed a request for habeas relief with this Court.  Petitioner's request for habeas relief was predicated on his contention that Mr. DiGiacomo provided constitutionally deficient assistance in both the California and New York cases.  (See, e.g., Docket # 16 at 4 (clarifying that all of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

Petitioner's claims "come under the auspice of ineffective assistance of counsel").) The parties briefed Petitioner's request and the Court ordered supplemental briefing on particular issues. The Court carefully considered the arguments presented and denied Petitioner's request for habeas relief and denied a certificate of appealability. (September 7, 2010 Minute Order (Docket # 19).)

Petitioner then filed the pending motion for reconsideration.[2]

**II. STANDARD**

Motions for reconsideration are disfavored and rarely granted. Resolution Trust Corp. v. Aetna Cas. & Sur. Co., 873 F. Supp. 1386, 1393 (D. Ariz. 1994). Such motions are subject to stringent standards:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

Local Rule 7-18; see also 389 Orange Street Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (outlining similar standards under Rule 59(e)). "A motion for reconsideration is not a vehicle to reargue the motion." United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001); see also Local Rule 7-18 ("No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.").

**III. ANALYSIS**

In his motion for reconsideration, Petitioner does not argue that he has discovered new evidence or that a change of law has occurred since the Court issued its September 7, 2010 Minute Order denying his habeas petition. Instead, he appears to argue that the Court "overlooked" various arguments that he had presented and/or erred in denying him habeas relief.

**A. Repeated Arguments**

The local rules prohibit parties from repeating arguments in a motion for reconsideration. Local

---

[2] Petitioner filed a motion for leave to amend to include discussion of Second Circuit cases to which Petitioner did not have access when his moving papers were filed. (See Docket # 23.) The Court **GRANTS** the motion for leave to amend and considers the motion for reconsideration as amended.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

Rule 7-18. The vast majority of Petitioner's arguments assert that, in denying his habeas petition, the Court "overlooked" various arguments he had presented. Regardless of whether a particular argument was addressed explicitly in the Court's September 7, 2010 Minute Order,[3] the Court reviewed all of Petitioner's arguments and found them all to be without merit. Other than his conclusory assertions that these arguments were "overlooked," Petitioner makes no showing that the Court did not actually consider them. Accordingly, the Court rejects the repeated arguments on this ground.

    Moreover, Petitioner has failed to persuade the Court that any of these arguments have merit even were they to be entertained by the Court. For example, Petitioner contends that the Court erred in rejecting his argument that Mr. DiGiacomo provided ineffective assistance in the California case by failing to advise Petitioner to file a motion to suppress a wiretap. Petitioner contends, inter alia, that the Court overlooked his argument that the Government omitted information in the wiretap affidavit regarding Hilliard Hughes, who was stopped for a traffic violation during which the Government seized precursor chemicals. (Docket # 20 at 5; Docket # 26 at 6.) Petitioner had argued that the Government knew that Hughes was associated with "Len LNU" and, therefore, the omitted "information should and would have caused the issuing wiretap Judge to question why [the Government did not] question Hughes about Len LNU's full identity, place of residence and any other useful information." (See Docket # 2 at 22-23.) The Court disagrees.

    This argument mirrors the "necessity" arguments rejected by the Court in relation to Petitioner's motion to withdraw his guilty plea and related motion for reconsideration. (See July 17, 2006 Order at 7-12; October 30, 2006 Order at 6-8.)[4] Petitioner's contention regarding Hughes similarly fails. As the Court noted previously, a defendant cannot challenge necessity by "merely suggest[ing], with the benefit of hindsight, alternative ways that the [Government] could have pursued its investigation." United States v. Carneiro, 861 F.2d 1171, 1178 (9th Cir. 1988). The fact that the Government "could have taken different or some additional steps in its investigation does not demonstrate that the district court abused its discretion in upholding the wiretap order." Id.

    Petitioner also contends that the Court overlooked the declaration filed by his former fiancé, Shameka McGowan, in denying his request for an evidentiary hearing. (Docket # 20 at 11.) Ms.

---

[3] The Court notes that some of the "overlooked" arguments were explicitly addressed and rejected in the Court's September 7, 2010 Minute Order.

[4] The parties appear to believe that this Court held that the Ninth Circuit's memorandum disposition on direct appeal bars Petitioner from raising the ineffective assistance of counsel arguments that were raised previously. (See Docket # 20 at 1 (Petitioner); Docket # 22 at 4 (Government).) The parties misconstrued the Court's September 7, 2010 Minute Order. The Court found that the issues raised mirror those already addressed **by this Court** and that the Court found Petitioner's arguments still lack merit when considered now. (September 7, 2010 Minute Order at 4.) The Court did not hold that the Ninth Circuit memorandum disposition had any preclusive effect with regard to Petitioner's ineffective assistance of counsel arguments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

McGowan's declaration states that, on April 22, 2004, Petitioner had told her, inter alia, that he did not want to plead guilty without first reviewing pre-trial discovery, that he was told he would face an immediate trial if he did not plead guilty, and that he felt he had no choice other than to plead guilty. (See, e.g., id.; Docket # 2 at Ex. C.) Ms. McGowan's factual assertions parallel the factual assertions already presented by Petitioner himself that were rejected by the Court:

> [T]he Court rejects [Petitioner's] argument that he is entitled to withdraw his plea based on his prior counsel's failure to provide him with discovery and/or counsel's contention that he would face an immediate trial if he did not plead. None of these arguments raise any potential deficiencies of which [Petitioner] was unaware at the time that he entered his plea. [Petitioner] has failed to offer any reason why he was unable to raise these concerns at his change of plea hearing, held several months after he signed the plea agreement, where there was no trial date set in the California case. Thus, [Petitioner's] current claim that his plea was involuntary is insufficient to establish a fair and just reason to withdraw his plea, especially in light of this Court's lengthy Rule 11 plea colloquy followed by [Petitioner's] repeated assertions, under oath, that he understood the rights he was giving up and that he was satisfied with the plea agreement and with his attorney's representation of him.

(July 17, 2006 Order at 13-14.) As before, Petitioner fails to provide any explanation why such concerns were not raised during his change of plea hearing on July 12, 2004 and why, instead, he repeatedly asserted under oath that he understood his rights, was satisfied with the plea agreement, and was satisfied with Mr. DiGiacomo's performance. Petitioner's statements to the Court "carry a strong presumption of verity." (Id. at 14 (quoting United States v. Moore, 599 F.2d 310, 314 (9th Cir. 1979)).) Accordingly, the Court did not err in denying Petitioner's request for an evidentiary hearing. See United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003) (A district court may deny a request for an evidentiary hearing where the movant's allegations, "when viewed against the record, do not state a claim for relief.").

      **B.**     **"Buyer-Seller" Exception Under Second Circuit Law**

Petitioner argues that Second Circuit authority dictates that he had a viable "buyer-seller" argument in the New York case and that Mr. DiGiacomo provided constitutionally deficient assistance by failing to advise him of that argument.[5] To prevail on a claim of ineffective assistance of counsel,

---

[5] This Court has already addressed the buyer-seller exception under Second Circuit authority. (See September 7, 2010 Minute Order at 5-7.) Petitioner's papers in support of his habeas petition relied on Seventh Circuit authority. After Petitioner's briefs had been submitted, the Government argued for the first time that the issue was governed by Second Circuit authority because Petitioner's case was originally pending in the Southern District of New York. (See Docket # 18 at 7.) In these circumstances, the Court will entertain on the merits Petitioner's arguments regarding the buyer-seller exception, as applied by the Second Circuit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

Petitioner must establish that his counsel's performance was both defective and prejudicial. (September 7, 2010 Minute Order at 3 (citing United States v. Alvarez-Tautimez, 160 F.3d 573, 576 (9th Cir. 1998)).)  With respect to the first prong, counsel's performance is deemed constitutionally defective only if it "fell outside the wide range of professional competence" and there is a "strong presumption" that counsel's performance was competent. (See id. at 4 (quoting Alvarez-Tautimez, 160 F.3d at 576).) Prejudice may be established by showing that the defective performance affected the outcome of the plea process such that, absent the erroneous advice, the petitioner would have instead insisted on going to trial. (Id. (citing Alvarez-Tautimez, 160 F.3d at 577).)

The Court's inquiry into counsel's performance is highly deferential and the standard for relief is demanding. This is especially so where, as here, prior counsel's performance is being challenged by a habeas petitioner who pled guilty to the criminal charges:

> [h]indsight and second guesses are . . . inappropriate . . . where a plea has been entered without a full trial . . . The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

Premo v. Moore, __ U.S. ___, 131 S. Ct. 733, 745-46 (2011); see also id. at 741-42.

### 1.    Proper Characterization of Petitioner's Argument

The parties have framed the issue presented as an allegation that Mr. DiGiacomo failed to inform Petitioner of a potential defense. (See, e.g., Docket # 18 at 6 (Government brief utilizing prejudice standard outlined in Hill v. Lockhart, 474 U.S. 52, 59 (1985) for allegations that counsel failed to advise a defendant of a possible affirmative defense); Docket # 2 at 17 (Petitioner arguing that he had a "legally cognizable defense").)  The Court also framed the issue in this manner and, consequently, focused its analysis on whether that potential defense likely would have been successful at trial. (September 7, 2010 Minute Order at 5 (using Hill prejudice standard for allegations that counsel failed to advise a defendant of a possible affirmative defense).)  The Court then held that Petitioner failed to establish that the defense would likely have succeeded at trial. (Id. at 5-7.)

While some authority suggests that the buyer-seller exception is an affirmative defense, see, e.g., United States v. Diaz, 190 F.3d 1247, 1259 (11th Cir. 1999), the Second Circuit treats it as an issue of the sufficiency of the Government's evidence to prove that a defendant entered into the alleged conspiracy and not as an affirmative defense. See, e.g., United States v. Hawkins, 547 F.3d 66, 73-74 (2d Cir. 2008) ("The critical inquiry in each case is whether the evidence in its totality suffices to permit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|

| Title | Leonard Brown v. United States |
|---|---|

a jury to find beyond a reasonable doubt that the defendant was not merely a buyer or seller of narcotics, but rather that the defendant knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale.")[6] Accordingly, the appropriate inquiry should not be whether Mr. DiGiacomo failed to advise Petitioner of a possible affirmative defense, but rather whether he provided constitutionally defective assistance in advising Petitioner to plead guilty based on his weighing of the Government's evidence of Petitioner's participation in the conspiracy.

      **2.**      **Analysis**

      Mr. DiGiacomo's advice that Petitioner plead guilty was not constitutionally deficient. The basic structure of the alleged conspiracy consisted of Petitioner manufacturing significant quantities of PCP and then selling the PCP to Errol Card through middlemen Harold Bridges and Brian Williams so that Card could resell the PCP in New York at prices higher than could be charged in Los Angeles. (See, e.g., Docket # 13 at Segar Decl. ¶¶ 4-8, 15-16 ).) Mr. DiGiacomo discussed with Petitioner the evidence that he actually joined the alleged conspiracy. For example, Petitioner admitted in filings with this Court that,

> [o]n or about May of 2003, Mr. DiGiacomo had his first visit with me at MCC New York to discuss the case, he asked me to explain my connection to the one count conspiracy charge in the [New York] indictment, I told him that I had no knowledge or participation in the overt act of giving anyone 48 oz of PCP on or about April 19, 1999 and nor did I conspire with anyone to distribute drugs in New York, that all of my transactions and interests were based solely in California.

(Docket # 15 at Brown Decl. ¶ 3).) Thus, from Petitioner's own declaration, it is clear that Mr. DiGiacomo was analyzing the sufficiency of the evidence that Petitioner had actually joined the conspiracy at issue in the New York case.

      As evidenced by his August 18, 2003 Letter to Petitioner, Mr. DiGiacomo also reviewed the record from the trial of Harold Bridges in conducting that analysis. (August 18, 2003 Letter (Docket # 4 at Ex. I; Docket # 2 at Ex. A.).)[7] Bridges had been "charged in a one-count indictment with conspiracy to distribute PCP in the Southern District of New York and possession with intent to distribute [PCP]." See, e.g., United States v. Bridges, No. 00 CR 210 (HB), 2000 WL 1170137, at *1 (S.D.N.Y. Aug. 16, 2000). Bridges was sentenced to life imprisonment after a jury convicted him of conspiring to distribute

---

   [6] For the reasons previously noted, Second Circuit law governs the Court's analysis of the buyer-seller exception. (September 7, 2010 Minute Order at 5 n.9.)

   [7] Petitioner and the Government both submitted the August 18, 2003 Letter. That letter appears to have been three pages long, but neither party submitted the second page. Accordingly the Court's analysis of the August 18, 2003 Letter is limited to the two pages that were submitted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

PCP. "The district court held a seven day jury trial in which the Government presented testimony from Errol Card, a cooperating witness who was a customer of Bridges, and from law enforcement officers who had stopped and surveilled Bridges and other members of the conspiracy. The government also presented recordings of conversations between Bridges and Card." See United States v. Bridges, 61 Fed. Appx. 736, 737 (2d Cir. Mar. 18, 2003) (affirming Harold Bridges's conviction and life sentence).

The August 18, 2003 Letter indicates that the Bridges record included "considerable evidence" linking Petitioner to that conspiracy. (August 18, 2003 Letter at 1.) For example, Mr. DiGiacomo discussed the evidence that Petitioner was manufacturing large quantities of PCP, including purchase receipts of precursor chemicals. (Id.)[8] Mr. DiGicacomo indicated that such evidence would be admissible to show identity, intent, knowledge, planning and preparation. (Id.) The August 18, 2003 Letter also notes the "telephone records of [Petitioner], McKenzie, Card, Bridges and Ivan Reyes (all of whom will testify), showing [they] were calling each other at relevant times, all being involved in a PCP conspiracy, as well as the airline records of flights taken by Card." (Id. at 3.) Moreover, Mr. DiGiacomo noted a fairly direct link between Petitioner and Card: "In June and July of 1999, Harold Bridges calls [Petitioner's] [phone] number a number of times, as reflected on [Petitioner's] phone bill found in the van. Erroll Card deals mostly with Bridges and knows [Petitioner] as 'Lyn,' and is on tape talking about PCP transactions with Bridges." (Id.)

From his review of the evidence, Mr. DiGiacomo concluded that the Government likely had sufficient evidence to convict Petitioner if the case proceeded to trial. (Id. ("I cannot stress to you enough the fact that in my opinion, going to trial in this case is asking for a life sentence.").) While perhaps not explicitly addressing the buyer-seller exception, the evidence addressed in the August 18, 2003 Letter is relevant to that exception. See, e.g., Hawkins, 547 F.3d at 74. Moreover, the Second Circuit authority regarding the buyer-seller exception supports Mr. DiGiacomo's conclusion that the Government had significant conspiracy evidence from which a jury could convict Petitioner. See, e.g., United States v. Medina, 944 F.2d 60, 65-66 (2d Cir. 1991) (The buyer-seller exception "does not apply . . . where . . . there is advanced planning among the alleged co-conspirators to deal in wholesale quantities of drugs obviously not intended for personal use. Under such circumstances, the participants in the transaction may be presumed to know that they are part of a broader conspiracy.") At a minimum, this evidence would generate serious doubts that Petitioner had any realistic chance of prevailing were the case to proceed to trial. Indeed, it is not even clear he would have been entitled to a jury instruction on the buyer-seller exception. See id. at 66 (where facts of the case "transcend the usual 'buyer-seller' scenario," such as when drugs are sold in wholesale quantities and there is evidence of advanced planning, district court did not err in refusing to give buyer-seller jury instruction). Under these circumstances, Petitioner failed to meet his "most substantial burden" of showing that Mr. DiGiacomo's strategic advice to plead guilty rather than proceed to trial and face a potentially longer sentence was

---

[8] Petitioner does not dispute that significant quantities of PCP were involved and, indeed, describes Errol Card as a "wholesale customer." (See Docket # 23 at 1.) The evidence in Bridges's case established that more than 30 kilograms of PCP were distributed through the conspiracy. See Bridges, 61 Fed. Appx. at 739 (finding "ample support" in the record for such a finding).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-8168 ABC; CR 03-847 ABC | Date | January 31, 2011 |
|---|---|---|---|
| Title | Leonard Brown v. United States | | |

beyond the wide range of professional competence.[9]

Accordingly, the Court concludes that Petitioner's ineffective assistance of counsel claim fails as it relates to the buyer-seller exception. For that reason, Petitioner's amended motion for reconsideration on this issue is **DENIED**.

### C. Denial of Certificate of Appealability

Petitioner argues that the Court erred in denying a certificate of appealability. The Court has considered his arguments and continues to believe that he has not made a substantial showing of the denial of a constitutional right. Accordingly, Petitioner's motion for reconsideration on this issue is **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's motion for leave to amend and **DENIES** Petitioner's amended motion for reconsideration. The Government is hereby **ORDERED** to submit a proposed judgment within 7 days.

**IT IS SO ORDERED.**

:

Initials of Preparer        AB

---

[9] The authority cited by Petitioner does not alter this outcome. For example, he argues that his case is indistinguishable from the facts that prompted the Second Circuit to apply the buyer-seller exception in United States v. Wexler, 522 F.3d 194 (2d. Cir. 2008). In that case, the Second Circuit reversed the conspiracy conviction because, inter alia, there was no evidence that the drugs were ever actually redistributed and the quantities at issue were consistent with personal use. Id. at 208. The facts in this case are starkly different.